IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARY A. HOBBS                                                                                           PLAINTIFF

        VS.                              Civil No. 2:13-cv-2258-MEF

CAROLYN W. COLVIN,
Commissioner of Social Security Administration                                                          DEFENDANT

**MEMORANDUM OPINION**

        Plaintiff, Mary A. Hobbs, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background:**

        Plaintiff protectively filed her application for DIB on August 2, 2011, alleging an onset date of December 31, 2009, due to diabetes, osteoporosis, problems with both knees, left shoulder, osteopenia, rheumatoid arthritis, neuropathy, scoliosis and bulging discs in her low back. (Tr. 115-121, 140)  Her application was denied initially and on reconsideration. (Tr. 57-59, 65-66) Plaintiff requested an administrative hearing, and the hearing was held on March 26, 2012, before the Hon. Clifford Shilling, Administrative Law Judge (ALJ). (Tr. 7-9, 23-54) Plaintiff was present and represented by her non-attorney representative, John Duty.

        Plaintiff was 61 years old at the time of the hearing. (Tr. 28) She graduated from high school,

and then had a year of training as an LPN and graduated from LPN school. (Tr. 36) She had past relevant work (PRW) experience as a charge nurse at a nursing home from 1995 to 1998, and then she was a CNA instructor at a private career school/nursing home from 2000 to 2006. (Tr. 37, 156-164) Plaintiff last worked on January 31, 2006. She stopped working because she was laid off and did not get to return to work after unemployment benefits ran out. (Tr. 140)

In a Decision issued on July 26, 2012, the ALJ found: (1) that Plaintiff last met the insured status requirements of the Act on December 31, 2010; (2) that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2009 through her date last insured on December 31, 2010; (3) that through the date last insured, the Plaintiff had medically determinable impairments of osteopenia and arthritis; (4) that through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months, and therefore, Plaintiff did not have a severe impairment or combination of impairments; and, (5) that Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset date of December 31, 2009 through the date last insured on December 31, 2010. (Tr. 13-18)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 15, 2013. (Tr. 1-4) Plaintiff then filed this action on December 13, 2013. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 7) Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 12 and 13)

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a medically determinable physical or mental impairment that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382(3)(c). A claimant must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require application of a five-step sequential evaluation

process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. §§ 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520 and 416.920 (2003).

## III.  Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff was not disabled from the alleged date of onset on December 31, 2009 through the date last insured on December 31, 2010. Plaintiff raises four issues on appeal: (A) that Plaintiff has additional medically determinable impairments that were not addressed by the ALJ; (B) that Plaintiff's impairments are severe and pre-date her date last insured; (C) that the ALJ's negative credibility determination of Plaintiff's testimony was insufficient and improper; and, (D) that the ALJ should have employed the expertise of a medical expert and other information sources. (Doc. 12, pp. 8-16)

### A.  Additional Impairments

A medically determinable impairment is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. In his Decision, the ALJ found that Plaintiff has two medically determinable

impairments: osteopenia and arthritis. (Tr. 15) Plaintiff asserts that "within a few weeks" of her last insured date she was diagnosed with diabetes, and that "very shortly thereafter" she was diagnosed with diabetic neuropathy. (Tr. 229, 233) Plaintiff's initial diagnosis of diabetes was not until February 18, 2011, seven weeks after her last date insured, and when she was notified of the abnormal lab results on February 18, 2011, Plaintiff stated that, "she was in no distress and having no signs of hyperglycemia." (Tr. 229) On February 28, 2011, Plaintiff reported that she was "doing much better." (Tr. 249) Plaintiff did not report any symptoms of diabetic neuropathy until July 27, 2011, when she complained of tingling and numbness in her feet and occasional burning sensation, and she was referred to a podiatrist for evaluation. (Tr. 211) Plaintiff saw the podiatrist, Dr. Magrini, on August 4, 2011, two days after making her application for DIB and over seven months after her date last insured. (Tr. 260-261) Plaintiff subjectively reported experiencing burning, pins and needles, tingling and numb sensation of both feet, more prevalent at night, "since last fall," but there were no medical records before the ALJ that Plaintiff had ever sought evaluation and treatment for any such diabetes related issues prior to her date last insured.

Plaintiff also argues that a CT scan done shortly after her date last insured showed evidence of diverticulitis which would account for her complaints of diarrhea. The CT scan was performed on February 18, 2011, seven weeks after Plaintiff's last date insured, and it did not confirm a diagnosis of diverticulitis, stating "no definite findings of diverticulitis." (Tr. 235)

There is a paucity of medical records prior to Plaintiff's last date insured, and the medical records that do exist do not indicate any serious medical conditions. On October 25, 2000, Plaintiff visited her doctor with complaints of nausea, vomiting and diarrhea, and she received prescriptions for Phenergan and Cipro. (Tr. 251) There are no records of any follow-up visits for that illness. A

laboratory report dated January 23, 2001 reflects a positive finding on an Anti-Nuclear Ab test. (Tr. 266) *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis). Plaintiff contends that the positive ANA test result is suggestive of the presence of an auto-immune disease such as rheumatoid arthritis or lupus; however, the lab report states, "a positive ANA result may be seen in a variety of diseases *and healthy individuals. Its interpretation depends on clinical findings and other laboratory data*." (Emphasis added.) There are no such "clinical findings or other laboratory data" as there are no records of any related physician visits; no records evidencing a diagnosis of any auto-immune disease; and, no treatment records. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

Plaintiff's other medical records prior to her date last insured are in October and November, 2010. She visited a doctor on October 21, 2010 with a complaint of left ankle pain. She received Naprosyn for treatment of posterior tibialis tendonitis. (Tr. 206-207) Plaintiff returned to the doctor on November 4, 2010, at which time the posterior tibialis tendonitis had resolved, and she was diagnosed as having osteopenia based on a bone scan. (Tr. 203) Plaintiff's physician recommended calcium and vitamin D supplements for treatment of the osteopenia, and he suggested that another bone scan will most likely need to be done "in approximately three to four years." (Tr. 203) No further treatment was recommended, and the physician did not restrict Plaintiff's activities in any way. On November 19, 2010, Plaintiff saw a dermatologist for some painful spots on her arms, legs, back and neck, and she was diagnosed with inflamed seborrheic keratosis. (Tr. 219) There are no records of any further complaints or treatment of that condition.

The scant medical evidence of record simply does not support a conclusion that Plaintiff suffered from additional medically determinable impairments prior to her last date insured, and the ALJ properly limited his findings of Plaintiff's medically determinable impairments to osteopenia and arthritis prior to Plaintiff's last date insured.

### B.  Severity of Plaintiff's Impairments

The ALJ denied benefits at step two of the five-step analysis, finding that none of Plaintiff's impairments were severe before her date last insured. For the reasons discussed below, the ALJ's finding is supported by substantial evidence.

Step two of the five-step evaluation to determine if a claimant is disabled states that a claimant is not disabled if his impairments are not "severe." *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). While severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), it is also not a toothless standard, and the Eighth Circuit Court of Appeals has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater*, 75

F.3d 429, 431 (8th Cir. 1996).

As discussed above, the few medical records before the ALJ for the period before Plaintiff's last date insured establish only that she had been diagnosed with osteopenia and arthritis; that taking calcium and vitamin D supplements had been recommended; and, that no restrictions or limitations had been placed on Plaintiff's activities by any physician. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (given that none of Plaintiff's doctors reported functional or work related limitations due to her impairments, there was a basis to question Plaintiff's credibility). The medical records prior to Plaintiff's last date insured just do not evidence complaints of back pain, problems with uncontrolled diabetes, diabetic neuropathy, diverticulitis, knee problems, left shoulder problems, or any other medically determined impairments that significantly limited Plaintiff's ability to do basic work activities.

It must also be considered that Plaintiff did not stop working in 2006 due to some medical impairment, but rather, because she had been laid off and did not get to return to work after unemployment benefits ran out. (Tr. 140) *See Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) (finding the claimant did not lose his job because of his disability, he lost it because his position was eliminated). There are no medical records from when Plaintiff last worked in 2006 up until October 21, 2010, when Plaintiff went to the doctor for left ankle pain which was resolved by her return visit to the doctor on November 4, 2010. (Tr. 203, 206-207) While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Given her allegations and testimony of disabling pain, Plaintiff's failure to seek medical treatment is inconsistent with a finding that her medically determined impairments were severe prior to her date last insured.

The ALJ considered opinion evidence including reports from the state agency medical consultants that found that there was insufficient evidence to rate Plaintiff's condition as of her last date insured. (Tr. 256, 257) The ALJ also considered a report from Plaintiff's consultant physician, George Tompkins, D.O., dated March 20, 2012. (Tr. 290-292) Based on his review of medical records, and one exam, Dr. Tompkins opined that Plaintiff is "limited to basic ADLs and is unlikely to ever be capable of most sedentary work activity eight hours per day for forty hours per week," and that she is "totally and permanently disabled." (Tr. 292) Dr. Tompkins' report, prepared one week before the administrative hearing on March 26, 2012, does not express any opinion as to *when* Plaintiff became totally and permanently disabled. In carefully considering Dr. Tompkins' assessment, the ALJ found that while Plaintiff's medically determinable impairments may *currently* limit her functional ability to less than sedentary range, there is no substantial evidence that the Plaintiff had such limitations on or prior to her last date insured, and that Dr. Tompkins provided no evidence suggesting such. Taking into account the opinion evidence, the ALJ could reasonably find that Plaintiff's medically determined impairments were not severe as of the date Plaintiff was last insured.

Considering the evidence as a whole, the ALJ's finding that Plaintiff did not have an impairment or combination of impairments prior to her last date insured that significantly limited her ability to perform basic work activities is supported by substantial evidence.

### C. ALJ's Credibility Finding

Among the ALJ's findings is his determination that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with finding that Plaintiff has no severe impairment or combination of impairments.

Plaintiff contends that the ALJ's critical assessment of Plaintiff's credibility was insufficient and improper. (Doc. 12, pp. 12-13) Although the ALJ employed a bit of Social Security boilerplate in stating that Plaintiff's "medically determinable impairments could have been reasonably expected to produce the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," the ALJ did appropriately address Plaintiff's credibility by examining and addressing the relevant medical evidence, application documents, and testimony at the hearing in accordance with applicable regulations, rulings, and Eighth Circuit case law.

The credibility of a claimant's subjective testimony is primarily for the ALJ to decide. *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010). The ALJ's credibility determination will be upheld if the ALJ provides good reasons for discounting the claimant's subjective complaints - such as inconsistencies in the record or the factors set forth in *Polaski* - and those reasons are supported by substantial evidence. *Gonzales v. Barnhart*, 465 F.3d 890, 895-96 (8th Cir. 2006).

In assessing the credibility of a claimant, the ALJ is required to examine and apply the following five factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and, (5) the functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A methodical discussion of each factor is not required, as long as the ALJ acknowledges and examines these factors prior to discounting the Plaintiff's subjective complaints. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000).

The ALJ based his credibility assessment on specific inconsistencies between Plaintiff's complaints and the record as a whole, as required by *Polaski*. As mentioned above, the record before

the ALJ contained very few treatment records relating to Plaintiff's alleged conditions prior to Plaintiff's last date insured. The ALJ found that Plaintiff's allegations and testimony were far more limiting than what the objective medical evidence showed during the period before Plaintiff's last date insured. (Tr. 17) Plaintiff testified that her pain was constant, a ten out of a possible ten in intensity before medication, and that medication provided some temporary relief and reduced the pain to eight out of ten. (Tr. 32-33) The ALJ considered, however, the absence of medical evidence supporting Plaintiff's subjective complaints of pain, a factor that supports the discounting of such complaints. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996). He specifically observed that when Plaintiff saw her physician on November 4, 2010, she reported that her pain had resolved. (Tr. 17, 203) The ALJ also noted that Plaintiff was not on any pain medication before her last date insured, commenting that Plaintiff was advised on November 4, 2010 only to take daily calcium and vitamin D supplements. (Tr. 17, 203) That a claimant is not on any pain medication has been held to be inconsistent with subjective complaints of disabling pain. *See Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

      The ALJ's discussion of the medical evidence reveals that he considered that Plaintiff had sought and received only infrequent conservative treatment prior to Plaintiff's last date insured. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (infrequent treatment is a basis for discounting a claimant's subjective complaints); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (treating physician's conservative treatment inconsistent with plaintiff's allegations of disabling pain).

      The ALJ also considered Plaintiff's allegations regarding her activities of daily living. (Tr. 17) Plaintiff reported that her daily activities included: taking blood sugar tests; preparing simple meals; folding laundry; performing personal grooming (with some assistance); watching television;

reading; using a computer; attending church; spending time with others; going outside to get the mail; visiting with social groups once a month; shopping in stores and by phone, mail, and computer; and, traveling by walking, driving, or riding in a car. (Tr. 168-76) Such activities are inconsistent with subjective complaints of disabling pain. *See e.g., Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (cooking, doing laundry, shopping, driving, and walking).

It is also relevant to the credibility determination that, as noted previously above, Plaintiff did not leave her work in 2006 as a result of any medical condition, but because she had been laid off and was not asked to return after unemployment benefits were exhausted. (Tr. 140) *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Medhaug*, 578 F.3d at 816-17.

Based upon the ALJ's evaluation of the objective medical evidence, Plaintiff's reported activity level which was inconsistent with her allegations of disabling pain, and the fact that Plaintiff left work for reasons other than a medical condition, the Court will not disturb the ALJ's decision to discredit, in part, Plaintiff's subjective complaints.

### D.  No Medical Advisor

Plaintiff next argues that pursuant to SSR 83-20 the ALJ should have consulted a medical advisor regarding the date of onset of Plaintiff's impairments. (Doc. 12, pp.13-14) The Court disagrees.

SSR 83-20 concerns the onset of disability. Its Policy Statement indicates that factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence; however, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical

evidence. The medical evidence serves as the primary element in the onset determination. Concerning onset of disabilities of non-traumatic origin, SSR 83-20 provides:

> "[i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record."

Social Security hearings are non-adversarial, and the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); 20 C.F.R. § 404.1520b. This duty extends even to cases like Plaintiff's, where an attorney represented the claimant throughout the administrative proceedings. *Johnson v. Astrue*, 627 F.3d 316, 319-20 (8th Cir. 2010). If the record is not sufficient for the ALJ to determine whether the claimant is disabled, he must develop the record further. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is only required to seek additional evidence or clarification, however, if a crucial issue is undeveloped. *Stormo*, 377 F.3d at 806.

Plaintiff argues that, "it is certainly possible that had Dr. Tompkins, or another doctor, completed a similar medical source statement prior to Plaintiff's date last insured, Plaintiff might very well have been found to meet the disability requirements then," and that, "SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of impairment onset is based upon a 'legitimate medical basis' (rather than just the ALJ's subjective opinion)." (Doc. 12, pp.13-14) In effect, Plaintiff argues that if the medical evidence of record was unclear or seemed to lack foundation, the ALJ was duty bound to develop the record further by asking a medical advisor or the treating physicians for more information. The Court does not read SSR 83-20

and Eighth Circuit case law to extend so far. First of all, no treating physician had completed any medical record, nor any medical source statement, prior to Plaintiff's date last insured evidencing that Plaintiff suffered from any severe and disabling impairment, and it was impossible for the ALJ to turn back time to seek any such report. Moreover, the medical evidence before the ALJ, from which he could make a determination of disability onset based upon a legitimate medical basis, showed that Plaintiff was not suffering from any severe medically determined impairments as of Plaintiff's date last insured on December 31, 2010.

The Court notes in this regard that there is absolutely no medical evidence of any medically determined impairment and disability as of December 31, 2009, the date of disability onset alleged by Plaintiff. There are no medical records in 2006 (when Plaintiff last worked), and none in 2007, 2008, nor 2009. The Plaintiff's alleged date of disability onset, therefore, has no basis in medical fact.

Reference to Plaintiff's work history does not help to identify the date of disability onset either. Plaintiff last worked on January 31, 2006, and she stopped working for reasons other than due to some medical condition. (Tr. 140)

As stated in SSR 83-20, the established disability onset date must be based on the facts and can never be inconsistent with the medical evidence of record. When there is little evidence of an alleged impairment and substantial evidence to the contrary, an ALJ can make an informed decision without having to develop the record further. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Such are the circumstances in this case. No crucial issue was undeveloped, but rather, the medical evidence simply does not support Plaintiff's allegation of disability onset. Accordingly, the Court finds that there was no need for the ALJ to develop the record further by consulting with a medical

advisor or seeking clarification from Plaintiff's treating physicians regarding the date of disability onset.

## IV.  Conclusion:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the ALJ's decision should be, and it hereby is, affirmed. The undersigned further finds that Plaintiff's Complaint should be dismissed with prejudice.

DATED this 20th day of January, 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE